LAND, J.
This is a suit for damages for the death of Wiley S. Jones, son -of the plaintiff, who was killed by a work train,of. defendant on August 14, 1907. Plaintiff al *355 leges that on said day Ms son “was drinking heavily and intoxicated,” that in attempting to walk over a defective public crossing over defendant’s track he stumbled and fell, and, “on account of his drunken condition, the deceased was ignorant of his perilous position.” It is further alleged that the work train was backing toward the crossing, and that the deceased was not given proper warning of its approach, and that the perilous situation of the deceased was discovered by the lookout on the end of the rear car in time to avoid the accident, if the engineer had been paying attention to his duties, and had promptly obeyed the danger signal to stop, given in ample time by the lookout. The petition further charges that the engineer was inexperienced, and that there were no lights on the rear end of the train as provided by railroad regulations.
The defendant filed an exception of no cause of action, which was overruled, and then answered, pleading the general issue, and that the negligence of the deceased was the sole cause of his death.
The case was tried before a jury, which found a verdict in favor of the plaintiff for $7,500 as damages.
From a judgment pursuant to the verdict, the defendant has appealed.
A motion to dismiss the appeal was filed by the appellee on the ground of the imperfection of the record. Certiorari issued to correct the defect complained of, and due return was made by the clerk. As appel-lee’s brief contains no reference to the motion to dismiss, we may assume that the defect has been cured or the motion abandoned.
There is no merit in defendant’s exception of no cause of action, as the petition shows that the accident might have readily been avoided despite the gross antecedent negligence of the deceased. The petition does not embody two distinct “counts” or causes of action as argued by defendant’s counsel, but simply alleges several grounds of negligence as contributing to produce the same injury.
It is alleged, and the evidence shows, that on the night of August 14, 1907, Wiley Jones, a youth who had passed his sixteenth birthday, was drunk, and when last seen alive was staggering toward the railroad crossing referred to in the petition. Whether he fell on the crossing or laid himself down upon it does not appear from the evidence, but it is certain that, when the defendant’s work train came backing down the track on the night in question, the body of the ill-fated youth lay prone across the rails. The body was nearly severed in the region of the abdomen, and death was instantaneous. The train was running at slow speed, the whistle had been sounded, and the bell was ringing. The train consisted of a locomotive, tender, and two empty fiat ears. The brakeman was sitting on the end of the rear car with his lantern in his hand. He suddenly saw something on the track, and immediately jumped up and gave the danger signal. The train was stopped, but, the something having disappeared, proceeded on its way. None of the train crew had any idea that a human being was on the track and had been run over until the next morning after the body of Wiley Jones was found.
Plaintiff’s whole case rests on the testimony of the brakeman, O’Neal, who gave the danger signal. According to this evidence, the engineer either did not see the signal or did not stop the train as soon as he should have done. According to the testimony of the engineer and the conductor, the emergency brakes were set and the train stopped almost immediately. Another witness, Gilbert, who was on the steps of the locomotive, testified that all three were looking toward the crossing, that he saw the signal, shouted to the engineer, and that the latter acted *357 promptly, and stopped the train within ’ a few seconds.
We may expect witnesses to honestly differ as to speed and distance in cases of this kind. The estimates as to the speed of the train range' from three to six miles per hour. 'The estimates as to distances vaTy widely. Neither rate of speed nor distance were noted at the time. The decisive question in the case is whether, under the particular •circumstances, the engineer performed his •duty, and stopped the train promptly. The engineer and conductor testified that both were looking, both saw the danger signal, And that the train was stopped almost immediately. The testimony of Gilbert shows that the engineer acted promptly. On the ■other side, we have the testimony of O’Neal .alone, taken by consent out of court, before the trial of the cause before the jury. The next day after the accident O’Neal failed to report for duty, and was thereupon discharged from the service of the company.
O’Neal the day after the accident reported to the company that he “felt the train strike something, but was unable to say what it was until party was found the morning after.” On the same day he told the superintendent that he thought he felt the car strike something on the track, and he flagged the •engineer down; that just at that time he .noticed the rear trucks of the ear did not ■pass over the object, and so he gave the signal to back up. O’Neal said to the con.ductor that there was something on the ■track, but it had gotten off. O’Neal said to another man that he saw something on the •track, and thought it was a cross-tie. By the time O’Neal testified the something on the track had developed into an object in motion like unto a hog lying down. The ■pith of O’Neal’s testimony is to the effect •that the engineer did not see the signals, and did not stop the train until it had passed from 35 to 50 feet beyond the object he saw. We think that the evidence shows clearly that the engineer saw the signal given by O’Neal, and did his best to stop the train. That the engineer was looking in the direction the train was moving is most probable in itself, and is supported by his testimony, and that of two other witnesses. The engineer knew that there was another locomotive beyond the crossing and was on the qui vive. None of the crew had any reason to believe that a human being was lying across the rails in a drunken stupor. The death of the young man was due to his own most grievous fault, and the situation required only ordinary care on the part of the crew to avoid the injuring after they discovered, or should have discovered, the danger. Gilliam v. T. & R. R. R., 114 La. 275, 38 South. 166; White v. Railroad Co., 114 La. 826, 38 South. 574; Jones v. Sibley L. & B. & S. Ry. Co., 121 La. 39, 46 South. 61. The law in cases of this kind does not exact unusual vigilance, extraordinary promptness, and all possible precautions on the part of the railroad. The burden of proof was on the plaintiff to show that the engineer could have avoided the injury by the exercise of ordinary care. Plaintiff’s sole witness was contradicted by other witnesses and his own statements. This witness was an intemperate and reckless man, and before the trial was killed by an officer acting in self-defense.
We consider ourselves as well qualified as the jury to consider evidence in the form of depositions taken out of court. Osborn v. Moore, 12 La. Ann. 714.
It is therefore ordered that the judgment appealed from be reversed, and it is now ordered that plaintiff’s suit be dismissed, with costs.