GLADNEY, Judge.
This appeal was one of two consolidated cases, the other being that of Curtis J. Ford et al. v. State Farm Mutual Automobile Insurance Company, No. 9693 on the docket of this court, this day decided, 139 So.2d 798. The facts and circumstances upon which this case arose are set forth in Ford et al. v. State Farm Mutual, supra. As stated therein, the only questions presented in either of the consolidated cases, relate to issues of quantum. The instant suit presents the claims of Thomas J. Stroud, individually and as head and master of the community existing between him and his wife; and as the administrator of the estate of his unemancipated minor son, Douglas W. Stroud, age 18, and for the use and benefit of said Douglas W. Stroud. Also Hubert W. Stroud appears in his individual capacity to recover the damages sustained by the automobile that was be *694 ing driven by Douglas W. Stroud at the time of the accident.
Thomas J. Stroud, individually, claimed medical and other expenses as arising from the injuries to his minor son, Douglas W. Stroud, totaling $4,097.85. The court allowed $2,377.85. This plaintiff also is administrator of the estate of his minor son, Douglas W. Stroud, and claimed the sum of $46,700.00 for pain and suffering, loss of earnings and future medical care. The trial court allowed the sum of $7,500.00 for pain and suffering, past and future, and the sum of $500.00 for loss of earnings during the summer of 1960, making a total award of $8,000.00 for these items. Hubert W. Stroud intervened in this suit to claim damages sustained by his automobile, which was being driven by Douglas W. Stroud at the time of the accident, in the sum of $563.67, which amount was awarded in the judgment. By answer to the appeal he has asked for an additional $100.00 for loss of use of the automobile for approximately two months. We do not find substantial proof for the increase of this amount.
Douglas W. Stroud was eighteen years old at the time of the accident. The automobile which he was driving received a severe impact, which caused Douglas Stroud to be thrown across the steering wheel, and receive muscular injuries to his neck and back. His legs were bruised, but otherwise there were no manifestations of trauma. Prior to trial Stroud was hospitalized on several different occasions, viz. May 25th to June 1st, August 10th to 14th, and December 16th to 25th, 1960. He was first treated by Dr. John M. Goss-lee, orthopedist, from the date of the accident, May 25th, and last seen by this doctor on June 17, 1960. Young Stroud then consulted Dr. Donald F. Overdyke, an orthopedist, who continued treatment until the date of trial, almost a year later. During the course of treatment, Dr. Over-dyke called into the case Dr. James W. Mitchell, a neurosurgeon. The latter performed a myelogram on December 18, 1960, and continued professional observation of the patient. Shortly prior to trial, at the request of defendants, Stroud was given an orthopedic examination by Dr. Willis J. Taylor.
In reviewing the medical testimony, the trial court commented that both Dr. Goss-lee and Dr. Taylor testified they could find nothing objectively wrong with . Douglas and felt that the patient was either malingering or had developed a severe conversion hysteria. Turning to the testimony of these witnesses, we find that Dr. Gosslee gave his diagnosis as of June 17, 1960, as a strain, ligamentous and muscular, in the cervical and lumbosacral regions. It was the opinion of this doctor that Douglas Stroud, as of June 17, 1960, should have been able to play football and basketball, work on the farm, plow, along with other farm work, and was at that time able to do finish work, floor work, and any type of work requiring stooping, squatting and bending. The examination by Dr. Gosslee disclosed a congenital back condition described as a form of bilateral sacralization of the fifth lumbar vertebrae. X-ray and clinical examinations were negative, and the record discloses the doctor believed the patient was complaining too much. He did not see Douglas Stroud professionally after June 17, 1960.
Dr. Willis J. Taylor, also an experienced and highly respected orthopedist of' Shreveport, conducted the customary orthopedic examination on Douglas Stroud on April 4, 1961, the date prior to trial. Following the examination the conclusion of the doctor was that convincing objective evidence of injury and disability were lacking. Of some significance is the fact that this examiner did not find any difference in size of the right and left thigh and calf of the muscles of Stroud’s legs. Dr. Overdyke and Dr. Mitchell testified as to such a difference observed on December-16, 1960.
*695 Dr. Overdyke made repeated examinations of Stroud and concluded, in no uncertain terms, that Douglas was “not leveling” with his examiner. It was largely for this reason that he called into con•sultation D.r. James W. Mitchell. Dr. Overdyke determined his patient sustained cervical lumbar and dorsal strains, or sprains, which were severe. He comment•ed in his report on December 16, 1960, to this effect:
“ * * * If this is not an atypical disc syndrome in the lower lumbar region of the back, then we must have some other secondary infectious process or some other process involving us here. I have not had a young, healthy, male in this age group with as much trouble from this type of accident in the relatively limited experience that we have had in these things. Furthermore, if, in the next few days, I cannot ascertain the cause of all this difficulty, pain and disability that he is having and "base it on something that is objective and provable, I am going to definitely recommend that they seek the services of another physicain as I will have exhausted all possibilities to effect a cure' here that are known to me.”
Dr. Mitchell, after being called in for consultation, commenced treating the patient, and was of the opinion there was a possibility of a herniated disc. Dr. Over-dyke observed the congenital weakness of the back as noted by Dr. Gosslee, but he did not agree with the diagnosis of possible herniated disc or nerve root irritation as advanced by Dr. Mitchell.
The trial court manifestly, in making its award for pain and suffering, contemplated the possibility of Stroud having to undergo future surgery, which was stated by Dr. Mitchell to involve a SO-SO chance. In employing this factor as affecting the award, we think there was error, since a clear preponderance of the medical evidence is against the finding by Dr. Mitchell. Thus the .record reflects the testimony of 'Gosslee, Overdyke and Taylor as contrary to that of Mitchell on this point, and, accordingly, we think the possibility of a herniated disc does not deserve the consideration accorded by the trial court. Dr. Overdyke believed that the congenital condition of Stroud’s back was aggravated by the accident and contributed to the pain suffered by young Stroud. However, the testimony does not convince us that such aggravation as may be attributed to the accident is permanent, although it is indicated in the testimony of Drs. Gosslee and Overdyke that the congenital weakness of the back which existed prior to the accident will continue for the remainder of the boy’s life. Dr. Overdyke testified that he wrote a letter asking-that Douglas Stroud be excused from active participation in certain phases of athletics. We opine that this was motivated by the condition of the back and cervical strain which was still causing Stroud pain at the time of trial.
Our conclusion is that Douglas Stroud sustained severe strains of the cervical and lumbar regions and that medical evidence showed considerable improvement in his condition as of the date of trial. Obviously, young Stroud’s doctors experienced difficulty in arriving at a satisfactory diagnosis because of the exaggerated character of his complaints. In our opinion, the award as made for pain and suffering, past and future, by the judge a quo was excessive and should be reduced to $5,000.00. As to future medical expenses, the trial judge observed that there was no definite showing that there would be future medical and hospital expenses, but, nonetheless, he allowed the sum of $1,000.00 for this item. We do not find this amount justified by the evidence. The allowance for loss of earnings during the summer of 1960 in the sum of *696 $500.00 is sufficiently established and we concur in this finding of the trial court.
The award in favor of Thomas J. Stroud, individually, is reduced from the sum of $2,377.85 to $1,377.85. The judgment in favor of Thomas J. Stroud, as administrator of the estate of his son, is modified by reducing the same to the sum of $5,500.00. As so modified and amended the judgment is affirmed in all other .respects. Appellees are taxed with the cost of appeal.