CULPEPPER, Judge.
This is a workmen’s compensation case. The trial judge awarded plaintiff benefits for total and permanent disability. Defendants appealed.
The issues are (1) the occurrence of an accident and (2) whether there is any causal connection between the accident and plaintiff’s present disability.
The facts show that plaintiff was employed by defendant, Sonic Production Company, as a pusher in the oil fields. His principal duty was to take samples from the wells. While so employed on October 6, 1963 he slipped and fell on a boardwalk, striking his right shoulder and right hip. Adams testified he immediately told his fellow employee, Patin, of the fall. Patin didn’t see the accident but remembers Adams telling him of it. However, the injury was slight because Adams continued to work the rest of that day and actually continued working for the next five months. The testimony of Adams’s wife was corroborative in that she said plaintiff complained to her of being hurt on October 6. Plaintiff made no report of the accident to his employer until October 18, 1963, at which time he said he slipped and “hurt right hip.”
Under these facts we find the accident was proved. Actually, defendant states in its brief filed in this court that it does not “vigorously contest” the accident. But defendant does strenuously contend there is no causal connection between plaintiff’s present disability and the accident.
Turning now to the issue of causal connection between the accident and plaintiff’s present disability, let us first state briefly the general facts of the medical history. Plaintiff had been suffering from diabetes and arteriosclerosis (hardening of the arteries) for several years. The expert medical witnesses testified that arteriosclerosis is greatly accelerated by diabetes.
The accident occurred on October 6, 1963. Plaintiff continued to work and did not seek medical attention until some time later in October he went to Dr. C. Thomas Curtis, who had been treating him for about 2 years for his diabetic and vascular condition. On the occasion of the October, 1963 visit, plaintiff did not complain to Dr. Curtis of any injury received in the accident, but instead complained of the continued pain in his legs attributable to arteriosclerosis. Dr. Curtis treated Adams with “circulation pills and calcium pills.”
Plaintiff also went to see Dr. John Guid-ry, a general practitioner, in December of 1963. Dr. Guidry, like Dr. Curtis, remembered no bruises or other external sign of the accident. He corroborated the diagnosis of diabetes and arteriosclerosis. This *53 ■doctor gave plaintiff shots, including Vitamin B-12.
Plaintiff continued to work for 5 months after the accident and remained under the care of Dr. Curtis. By March of 1964, Dr. Curtis thought that the vascular condition had progressed to the point where surgery was necessary. Plaintiff was having a serious deficiency in blood supply to his legs, with symptoms of pain, coldness, lapse of pulse and even a pre-gangrenous condition. Accordingly, Dr. Curtis referred Adams to Dr. George Morris, a vascular surgeon in Houston, Texas. Dr. Morris operated and replaced the hardened arteries in both legs with plastic blood vessels. He thought the operation was successful and even predicted that plaintiff might be able to return to his prior occupation. But the evidence shows plaintiff is presently disabled.
With these general facts of the medical history in mind, let us turn to the specific issue of whether plaintiff has proved a causal connection between the accident and his present disability. We will first state the law. In the recent case of Guillory v. New Amsterdam Casualty Company, 244 La. 225, 152 So.2d 1 (1963) plaintiff suffered a pre-existing spondylolithesis which he contended was aggravated by a back sprain received in the accident. In holding that the proof was not sufficient to show a causal connection between the accident and plaintiff’s disability, our Supreme Court said:
“Even though this is a compensation suit, plaintiff bears the burden of proof, as in other civil cases, and must establish his claim by a preponderance of the evidence and to a legal certainty. See Bankston v. Aetna Casualty Company et al., La.App., 132 So.2d 111 (1961), and cases cited therein. What is meant by this rule is that plaintiff in a compensation suit is required to make out his case by a preponderance of the evidence and with the same legal certainty as required in any other civil case. It follows from this, that speculation, conjecture, near possibility, and even unsupported probabilities, are not sufficient to support a judgment. Green v. Heard Motor Co., 224 La. [1077,] 1078, 71 So.2d 849 (1954); Henderson v. New Amsterdam Casualty Company, La.App., 80 So.2d 438 (1955). Though in compensation cases some of our ordinary rules and procedures are relaxed and liberally construed in favor of the employee, the above rule as to the burden of proof has been held to apply. Moore v. Employers Liability Assurance Corp., La.App., 124 So.2d 804 (1960); Malone, Louisiana Workmen’s Compensation Law and Practice, Sec. 252 (1951 2d ed.).”
In Bernard v. Louisiana Wildlife & Fisheries Commission, 152 So.2d 114, (La. App., 3rd Cir. 1963; writ denied) we stated the law as follows:
“The established jurisprudence of this State is to the effect that in a compensation case, as in other cases, plaintiff bears the burden of proof, and he is required to establish his claim with reasonable certainty by a preponderance of the evidence. Caldwell v. Caldwell, La.App., 55 So.2d 258; Rowan v. Travelers Ins. Co., La.App., 111 So.2d 387. However, a claimant does not have to prove causal connection to an absolute certainty; it is sufficient that he establish the cause of his injuries by a reasonable probability. Ellzey v. Fidelity & Casualty Co. of New York, La.App., 123 So.2d 593.”
We note particularly the language of the Supreme Court in the Guillory case which says that “speculation, conjecture, near possibility, and even unsupported probabilities, are not sufficient to support a judgment.” Also the language of this court in the Bernard case which states the causal connection must be shown by a “reasonable probability”. '
*54 Now let us see wliat the doctors in the present case said. From the testimony of Dr. Curtis we quote:
“ ‘Q. And, in conclusion, again you feel that it is reasonably medically possible that an episode of trauma could have precipitated the condition which you found ?
“A. It could have precipitated the acute onset of pain, yes.’ ”
However, Dr. Curtis also testified:
“ ‘Q. And, doctor, likewise, isn’t it entirely medically possible that his condition, with the pain that you referred to, was a result of simply the natural development of the arteriosclerosis?
“ ‘A. We have no way of looking in the man’s arteries, yes, sir.
“ 'Q. In other words, it could have been?
'“A. Yes, sir.’ (Trans, p. 182)”
From these and other portions of his testimony, it is apparent that Dr. Curtis thought either cause was possible, i.e., the accident could have been a possible contributing cause or the natural development of the disease could have been the sole cause. Dr. Curtis elsewhere in his testimony also mentioned other possible causes of the progress of the arteriosclerosis, but Dr. Curtis did not at any point in his testimony say that in his opinion the accident was a cause of the vascular condition or even that it probably was a cause. The most he ever said was that it was a “reasonable possibility” or that it “could” have contributed to the progress of the vascular condition. A reading of Dr. Curtis’s testimony in detail convinces us that he thought such a causal connection was only a possibility and that it was not a reasonable probability.
Dr. John Guidry testified substantially to tire same effect as Dr. Curtis. Dr. Guidry said there was a “reasonable medical possibility” that the trauma accelerated the disabling vascular condition. He explained that direct trauma to an arteriosclerotic vessel could aggravate it by causing injury to the vessel itself, or clots in the vessel. But when Dr. Guidry first examined plaintiff, about 2 months after the accident, he found no visible bruises or other signs of injury. Dr. Guidry, like Dr. Curtis, said that plaintiff’s vascular condition could be entirely the result of the progressive disease. Also, Dr. Guidry did not at any point in his testimony give an opinion that there was a causal connection between the accident and plaintiff’s vascular trouble or that this was even a reasonable probability. The most he ever said was that this was a reasonable medical possibility.
Dr. Morris gave positive testimony that a causal connection betweeii the accident and plaintiff’s vascular condition was possible, but not probable. This doctor testified:
“ ‘Q. (By Mr. Allen) I think you have testified that it’s possible that a trauma suffered by Mr. Adams could have aggravated his pre-existing condition of arteriosclerosis?
“ ‘A. Yes.
“ 'Q. Would you care to elaborate on that in this particular case?
“‘A. No.
“ ‘Q. It is probable that trauma brought on his condition?
“'A. No.’ (Trans, p. 69)”
It is also noteworthy that blood vessels in both legs were replaced with plastic tubes, but only the right hip was injured. When asked about this, Dr. .Morris testified positively that an injury to the right hip could not have any causal connection with the vascular trouble in the left leg.
Plaintiff relies heavily on the fact that he had worked regularly for 12 years before the accident, but has been disabled since the operation. He seeks to invoke here the rule applied in many cases that where a person is in good health before *55 ■the accident, and within a short time thereafter becomes disabled, it will be presumed there was a causal connection between the accident and the disability.
Plaintiff cites Peppers v. Toye Bros. Yellow Cab Co., 198 So. 177 (Orleans La. App. 1940) in which a 70 year old man had pre-existing dormant colitis of the ■colon, but was otherwise in good health. Within 3 days after being involved in an .automobile accident the colitis became active and he thereafter suffered hemorrhages from his lower bowel. The medical testimony went only so far as to show there was .a “reasonable possibility” of causal connection. With Judge (now Justice) McCaleb as its organ the court reviewed several previous cases and then stated the law as :follows:
“It will be seen that the holdings in the foregoing decisions are based upon possibilities and that the courts have .adopted the view that, where a person who enjoys good health suffers an accident and within a short time there.after a dormant pre-existing illness or ■ old injury disconnected with the acci•dent flares up or becomes active, it will be presumed that the flare up was -not a coincidence and that it was set in motion as a direct result of the •accident. And it is sufficient for the •plaintiff, in order to cast the burden of proof upon the defendant, to show by medical testimony that there is a reasonable possibility that the result claimed for did happen.”
In the recent case of Nixon v. Pittsburgh Plate Glass Co., 161 So.2d 361 (La.App. 3rd Cir. 1964) a laborer was in good health, •without any pre-existing disease. • While .at work he suffered a puncture wound of the hand, for which he was given a tetanus ■toxoid booster shot in his left arm by the plant nurse. Within a few days'the arm began to swell and thereafter became rigid, •then atrophied and flabby. Finally, about 18 months after, the accident the ■ arm be-came gangrenous and was amputated 2 ór 3 .inches below the elbow. One physician thought the tetanus shot had injured a nerve in the arm, but others disagreed. Several doctors thought disability was due to some kind of hysteria. In this situation, where the medical testimony was in conflict and did not establish the cause of disability by a reasonable probability, we applied the rule quoted above from the Peppers case and held as follows:
“Since the plaintiff was in good health prior to the accident, without any symptoms of disease or disability referable to his left arm, and since he experienced swelling, pain and disability immediately after the tetanus shot was administered and he has been disabled continuously subsequent to that time, we think the presumption is warranted that the shot administered to him in treating his minor injury caused his present disability. We find nothing in the evidence which tends to overcome that presumption.”
After a careful consideration of the Peppers case and the Nixon case, as well as the many authorities cited therein, we do not think the facts of the present matter justify a presumption of causal connection between the accident and the disability. This is not a situation where the plaintiff was in robust good health before the accident, or where he had a pre-existing dormant disease, but is one where plaintiff had a known disease which was progressing rapidly. Adams had arteriosclerosis which was being-greatly accelerated by diabetes, for which condition he had been under treatment several years.
Furthermore, and most important of all, there was no change in Adams’s condition soon after the accident. He remained at work for 5 months. The condition which finally required surgery was a deficiency in blood supply, to his legs. This was the natural result of the progressive pre-exist-ing disease. Even to the lay mind, it does not seem reasonable that the slight bruise to plaintiff’s right hip would aggravate or accelerate arteriosclerosis in the vessels of *56 both legs, particularly where there was little pain or other symptom immediately following the injury.
Under all of the circumstances we do not think the facts here warrant a presumption of causal connection between the accident and the disability. This is not a situation where there is no other reasonable explanation but that the accident caused, activated or accelerated the . disability. There is a very reasonable explanation, unconnected with the accident. Plaintiff was not in good health before the accident, nor did he even have a merely dormant disease. He had an active, rapidly progressing disease, in which there was no substantial change soon after the accident. We think it is much more probable than not, that there was no causal connection between the accident and plaintiff’s disability.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the defendants, Home Indemnity Company and Sonic Productions Company, and against the plaintiff, Mozel Adams, rejecting plaintiffs demands at his costs. All costs of this appeal are assessed against the plaintiff appellee.
Reversed and rendered.