CULPEPPER, Judge.
Plaintiff seeks workmen’s compensation benefits for total and permanent disability caused by an accident which occurred during his employment with defendant, Gianfala & Son, Inc. From an adverse judgment, plaintiff appealed.
The substantial issues are (1) whether plaintiff’s work caused disability continued *348 beyond the period of about six months during which compensation was paid and (2) whether this case should be remanded for additional medical evidence.
The facts show that plaintiff is about 60 years of age and has worked most of his life as a farmer but occasionally did “a little carpenter work.” On the date of the accident, July 13, 1967, he was working for Gianfala & Son, Inc. as a laborer on a road construction job. While helping to raise a heavy iron beam by pulling it with a rope, he experienced a “burning” sensation between his shoulders and in the middle part of his back. He told no one about the accident and remained on the job the rest of the day but did not return to work thereafter. Plaintiff’s wife rubbed his back with alcohol at home but the pain did not subside and finally on July 27, 1967 he went to see his family physician, Dr. Ward M. Bellard, a general practitioner.
Dr. Bellard found “some pain and a slight amount of muscle spasm in the lumbar muscles on both sides and in the trape-zieus muscles near the right scapula.” He continued to see plaintiff and by November 21, 1967 found the muscle spasm was minimal and told plaintiff he could return to work “if he felt like it.” Dr. Bellard never did actually discharge plaintiff but recommended that he see an orthopedist for any continued symptoms.
Dr. Phillip F. Pupera, also a general practitioner, saw plaintiff only one time and then on August 21, 1967. This physician diagnosed a strain of the muscles of the upper lumbar and lower thoracic area, possibly caused by the accident of July 13. He estimated plaintiff could return to work in about two months.
On the request of his counsel, plaintiff was examined on two occasions by Dr. J. Hugh Larriviere, an orthopedic surgeon of Lafayette. On the first visit, September 12, 1967, this physician found no definite muscle spasm although there was tightness in the muscles of the thoracic area. He noted a lipoma, which is a fatty tumor, at the base of the neck. Also, x-rays revealed pre-existing degenerative arthritic changes of the cervical and thoracic vertebrae. His diagnosis was a strain of the muscles in these areas possibly aggravating the pre-existing arthritic condition. He estimated plaintiff could return to work in six or eight weeks.
Dr. Larriviere did not see plaintiff again until August 30, 1968, which was after workmen’s compensation payments had been terminated on January 5, 1968 and this suit had been filed. On this visit, plaintiff complained of pain in the cervical area, as well as numbness of the arms and fingers. Dr. Larriviere expressed the opinion that these symptoms were not connected with the accident, all residuals thereof having healed. He said plaintiff could return to work, although a man of his age with pre-existing arthritis might have some discomfort occasionally.
On the request of defendant, plaintiff was examined on January 3, 1968 by Dr. Fred C. Webre, an orthopedic surgeon of Lafayette. This physician found no evidence of limited motion or muscle spasm and no atrophy of the muscles, which would be expected from plaintiff’s continued complaints of pain. X-rays revealed arthritic changes in the cervical spine. Dr. Webre also found the lipoma at the base of the neck. After this first visit, he expressed the opinion that plaintiff had reached maximum benefit from therapy and could return to his previous employment. Based on this report, workmen’s compensation payments were stopped on January 5, 1968.
Dr. Webre again saw plaintiff on September 4, 1968, after the present suit was filed. He found no atrophy or other changes and expressed the opinion plaintiff could return to work, although the pre-ex-isting arthritic condition would probably cause him some discomfort on occasion.
Dr. Richard Saloom, a general practitioner in Lafayette, examined plaintiff on March 29, 1968 at the request of his attor *349 ney. He noted the lipoma and found some limitation of motion of the head. Based principally on the history given by plaintiff, this physician thought that he should not return to work but should receive further observation and treatment. However, plaintiff never returned to see Dr. Saloom.
Also, at his own request, plaintiff was examined by Dr. Murray Brown, a general practitioner in Rayne, on three occasions, August 1, September 6 and October 8, 1968. Dr. Brown was of the opinion that Mr. Guidry’s complaints were due principally to the lipoma and the arthritic condition of the spine which caused him to carry his head “bowed” more than normal. He said also that plaintiff “possibly has” a disc injury in the cervical area. Because of plaintiff’s age and general condition, he did not think he could return to the heavy work of a roustabout.
Dr. Byron M. UnKauf, an orthopedic surgeon of New Orleans, saw plaintiff on one occasion, September 25, 1968, at the request of his counsel. After various tests Dr. UnKauf concluded plaintiff has a ruptured intervertebral disc at the C-5 — C-6 level and is unable to return to work.
In a lengthy and well considered opinion, the trial judge discussed all'of the expert medical testimony in greater detail and reached the following conclusion:
“Of the seven physicians who examined Mr. Guidry three of them, namely Drs. Purpera, Larriviere and Webre, considered him able to return to his work by the end of the year 1967. Dr. Bellard was reluctant to commit himself since he no longer considered himself to be the attending physician. Dr. Saloom’s opinion was of little assistance to the court, one way or the other. Dr. Brown’s opinion that Mr. Guidry could not return to usual employment was based mostly upon the patient’s appearance. He attached some significance to the lipoma and to the arthritic condition. His belief that a disc involvement may exist was not supported by any of the other examining physicians. Dr. UnKauf did say that the employee was disabled and unable to return to work. He was the only one of the three who examined X-rays who was not impressed with the arthritic condition of Mr. Guidry’s spine.
“My conclusion is that Mr. Guidry has failed to establish by a preponderance of the evidence total disability resulting from any work connected accident so his suit should therefore be dismissed at his cost.”
In addition to this expert medical testimony, plaintiff called several lay witnesses who said generally that before the accident plaintiff worked on his farm and occasionally on construction jobs but that since the accident he has not worked. The trial judge obviously gave little weight to this testimony. We find no manifest error here.
There is no dispute as to the law. Plaintiff in a workmen’s compensation case, as in other civil cases, must establish his claim by a preponderance of the evidence. Adams v. Home Indemnity Company, La.App., 180 So.2d 51 (3rd Cir.1965); Guillory v. New Amsterdam Casualty Company, 244 La. 225, 152 So.2d 1 (1963).
For the reasons set forth in the trial court’s summary of the evidence quoted above, we agree that plaintiff has failed to prove his claim by a preponderance of the evidence. Actually, we find a preponderance of the evidence shows that by the date workmen’s compensation payments were stopped, January 5, 1968, plaintiff had recovered from all effects of the accident; and any symptoms thereafter were caused either by the lipoma or the pre-ex-isting arthritic condition.
Plaintiff has filed a motion to remand this case to the district court for the taking of additional medical evidence. He attaches to his application the report of an examination by Dr. Homer D. Kirgis, a neurosurgeon of New Orleans. This ex- *350 animation was made on September 24, 1969, which was after judgment was rendered for defendant on March 13, 1969. Dr. Kirgis opines that plaintiff’s discomfort is caused by a ruptured intervertebral disc at the fifth cervical interspace. Based on the history that the symptoms began with the injury of July 13, 1967, he expressed the opinion that the accident caused the disc.
In Robinson v. Fidelity & Casualty Company of New York, La.App., 181 So.2d 318 (3rd Cir. 1965) we set forth the law applicable to applications for remand in workmen’s compensation cases on the grounds of a post-trial medical examination. One of the factors to be considered is whether plaintiff could have procured such medical examination before the trial with reasonable diligence. In the present case there is no contention that plaintiff could not have secured the examination by Dr. Kirgis before the trial. However, this showing alone does not preclude a remand if other circumstances strongly require it.
If the post-trial medical examination is merely cumulative, it is ordinarily not sufficient to justify a remand. However, if the new medical evidence indicates some new symptom or condition not considered or discoverable by the pretrial examinations, our courts have, in a limited number of cases, granted a remand. See Glidden v. Alexandria Concrete Company, 242 La. 625, 137 So.2d 894.
In the present case, the medical report of Dr. Kirgis is purely cumulative. He has taken the same history and made essentially the same examination which was made by three orthopedists who testified, i.e., Drs. Larriviere, Webre and UnKauf. Plaintiff argues that Dr. Kirgis is the first neuiosurgeon to examine his back. However, it is apparent from the record that these two specialties, orthopedic surgery and neurosurgery, overlap the field of intervertebral discs.
Generally, we think that plaintiff has been seen by seven doctors, three of whom are specialists in the field covering inter-vertebral discs. The pretrial medical examinations were complete, thorough and extended over a period of more than a year. After plaintiff lost his case he then obtained additional medical evidence which is purely cumulative. Under the circumstances, neither equity nor the paternalistic aims of the Workmen’s Compensation Statute prevail over the need that there ultimately be an end to all litigation.
For the reasons assigned, plaintiff’s motion to remand this case is denied. The judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.