DOMENGEAUX, Judge.
Plaintiff-appellee filed suit for workmen’s compensation benefits for total permanent disability against his former employer and its workmen’s compensation insurer, Surplus Underwriters, Inc., on the basis of a stroke which he suffered on February 13, 1967. The trial court was of the opinion that plaintiff had proved his case to a reasonable certainty and rendered judgment in his favor awarding plaintiff total permanent disability payments of $35.00 per week for 400 weeks. From this adverse judgment defendants have effected this appeal.
Defendant Fishing Tools, Inc., is engaged in the oil-field business of retrieving “fishes” which are any portion of the drill *506 ing string such as pipe, bits., etc., which is accidentally disconnected or dropped into the drilling hole. Plaintiff was employed by defendant as an operator, a skilled workman who supervises the fishing operation.
The record discloses that operators with companies such as defendant are frequently required to work long hours for periods of time, often of several days duration, during which times they must take their sleep and nourishment at irregular intervals. On his last job before his stroke plaintiff testified that he was required to work for twenty-one hours without rest and with only three teaspoons of condensed milk to eat. The lack of food on that job was due to the fact that it took place on a new well-site which was not yet equipped with provisions. This final job occurred some eleven days before plaintiff suffered his stroke, yet he attributes his ultimate attack to the physical and mental stress of that day.
Plaintiff states that he felt unwell while on that last job and alleges that his illness was the first manifestation of what later became a stroke. We note however that during the eleven days that intervened his last job and his stroke, plaintiff traveled to Houston, Texas, where he visited with his wife who was about to undergo an operation. He returned to New Orleans and reported his arrival to his employer stating that he was ready to return to work. The following day plaintiff went to his employer’s office or shop but did no work of any kind and returned to his mobile home shortly thereafter. He states that he was feeling very well at that time, but shortly after returning home, while he was relaxing and reading a magazine, he suffered his stroke. Immediately following the stroke plaintiff was taken to West Jefferson Hospital in Jefferson Parish, Louisiana, where he was seen by several physicians for six days. He was then released and he returned to Houston.
Plaintiff is supported in his allegations of what produced his stroke by one Dr. Herman Burkhalter of Houston, Texas, who testified by deposition. Dr. Burkhal-ter, a general practitioner and surgeon, stated that he first saw plaintiff professionally on February 27, 1967. At that time he took a history from plaintiff and observed that he had weakness of the right side of his body, trembling, shivering gait, dysphasia and lethargy. He also spoke by telephone with a physician at West Jefferson Hospital in Louisiana. Dr. Burkhalter confined plaintiff to Red Bluff General Hospital, which the doctor owned, for nine days. While there plaintiff’s treatment consisted of oral medication for diabetes, a pre-existent condition and medicine for hypertension.
The diagnosis which he advanced in his deposition was that plaintiff had suffered a cerebrovascular accident in the form of an aneurysm. He described the aneurysm as being much like a bubble on an inner-tube which subsequently bursts. He surmised that plaintiff had developed an aneurysm on his blood vessel while on the job which burst eleven days later while he was at rest, causing the stroke. Plaintiff relied on this testimony alone for the medical portion of his case.
Defendant relied on the testimony of Dr. Sam Nadler, a specialist in internal medicine. Dr. Nadler had never examined plaintiff personally but he did have all of plaintiff’s hospital records from West Jefferson Hospital before him and these were introduced in evidence. Applying his expertise to the medical reports and hospital records, Dr. Nadler concluded that plaintiff probably did not have an aneurysm at all and that if he did it certainly did not burst since none of the symptoms normally associated with such a blowout were present. These symptoms include blood in spinal fluid, complete paralysis of members of the body, prolonged speech impairment, etc. It was Dr. Nadler’s opinion that the diagnosis which appears on the medical reports, of cerebral vascular insufficiency and diabetes mellitur, is substantially correct, except that he felt that the cerebral *507 vascular insufficiency, a shortage of blood flow to the brain, was caused by a thrombosis. This he explained to be a plugging of an artery, probably caused by a blood clot.
We are impressed with the diagnosis and opinion expressed by Dr. Nadler, a specialist in the sort of malady which afflicted plaintiff. His conclusions seem to us to be the more reasonable explanation of plaintiff’s ailment. We are also cognizant of the fact that insofar as we can tell from their records and reports those physicians who first treated plaintiff after his stroke, the physicians at West Jefferson Hospital, substantially agree with Dr. Nad-ler’s conclusions. In this connection we do not overlook the fact that plaintiff failed to call these physicians to testify although it was they who first observed him after his stroke, performed all of the medical tests which, insofar as the record reveals, were performed, treated him for six days at West Jefferson Hospital, and then discharged him as being substantially recovered. On oral argument before this court both parties sought to explain their failure to call these physicians by assertions that each thought the other side would call them. This does not avail plaintiff since it was incumbent upon him to prove his case, whereas there was no such burden on defendant, and the physicians involved were in no way connected with defendant. It is well settled in our law that the failure of a workmen’s compensation claimant to call physicians who have treated him, and are not in the employ of his employer, raises a presumption that their testimony would be adverse to him. Slocum v. American Casualty Insurance Company, La.App., 189 So.2d 299; Powell v. Liberty Mutual Insurance Company, La.App., 80 So.2d 902. Thus we may presume what is otherwise evident from the medical records admitted in evidence, that the testimony of the physicians at West Jefferson Hospital would have been adverse to plaintiff’s cause.
On the other hand we find the deposition of Dr. Burkhalter to be most unconvincing. Dr. Burkhalter, insofar as we can determine, performed no tests to help him in making his diagnosis. He merely listened to plaintiff’s complaints and observed his outward appearance, yet as is clear from Dr. Nadler’s testimony, such findings as blood in the spinal fluid would have been extremely relevant in making the diagnosis that Dr. Burkhalter made. Further we are concerned with a document which was admitted in evidence entitled: “Attending Physician’s Statement — Group Health Insurance Claim.” This appears to be, and Dr. Burkhalter testified is, a claim form, sent by his office to an insurance company. At the bottom of this form, in a space captioned “signature of attending physician” is handwritten the name of A. H. Burkhalter, M.D., next to a typewritten version of the same name. This report diagnoses plaintiff’s ailment as being “uncontrolled diabetes mellitus,” states that the symptoms first appeared, or accident happened, on February 27, 1967, and further states that the plaintiff’s condition is not due to injury or sickness arising out of plaintiff’s employment. Dr. Burkhalter attempts to explain this by saying that the signature at the bottom of the instrument is not his but was affixed thereto by someone in his hospital authorized to sign his name to certain documents. He further states that this form does not represent a medical opinion but is only an insurance report. We are not satisfied with his explanations.
Thus plaintiff has limited his medical evidence to the deposition of a medical doctor who saw him two weeks after his stroke, when most of his symptoms had disappeared, made no medical tests, and allowed a grossly inconsistent insurance report to go out from his office bearing his signature. It is our opinion that plaintiff has failed to prove a causal connection between his employment and the stroke which occurred eleven days after his last activity therein. We do not hold that in *508 no case could a workman recover compensation benefits when he suffered an injury-while in the course and scope of his employment which manifested itself eleven days later in the form of a stroke, but plaintiff in this case has failed to prove that his injury arose in the course and scope of his employment.
While we are mindful that the judgment of the trial court is entitled to great weight because he had the opportunity to see and hear the witnesses, we think that in this case the trial judge was not in a much better position than we are to evaluate the evidence since plaintiff’s expert testified only through deposition. The plaintiff having failed to prove his case, the trial judge committed manifest error in holding in his favor.
For the foregoing reasons the judgment of the trial court must be and the same is reversed, and judgment is hereby rendered dismissing plaintiff’s suit. Costs of this appeal to be borne by defendant.
Reversed.