MILLER, Judge.
Sidney Trahan was awarded total and permanent workmen’s compensation benefits against Travelers, the workmen’s compensation insurer of Acadia Drilling Company. Defendant appealed.
ISSUE: Does the medical evidence support the holding that three fractured ribs have totally and permanently disabled plaintiff ?
On March 28, 1968 while employed as a roughneck, Trahan, age 53, was struck a severe blow on the right side of the back in the lower rib area near the spine. He was knocked down but not unconscious. He was taken to the Rayne Hospital and treated by his physician, Dr. Murray Brown. Although the record was left open for the taking of Dr. Brown’s testimony, the testimony was not presented.
Defendant introduced a report from Dr. Brown showing that plaintiff was hospitalized five days for “Multiple fractured ribs right lower chest.” Dr. Brown’s report dated October 10, 1968 stated that plaintiff was able to resume light work on July 30, 1968.
Plaintiff testified that Dr. Brown furnished a chest binder or belt for plaintiff to wear, but this was discarded after two or three days because “ * * * it was squeezing me too much * * *
Plaintiff testified that he suffered a slight heart attack in 1959 which caused him to miss about three months work as a roughneck. Since that time, plaintiff has had checkups every three months from Dr. Brown. He has taken a pill each day since 1959 to “treat” his blood.
Additionally, plaintiff testified at the March 5, 1970 trial that for the past 7 months he had been treated by Dr. Brown for thyroid trouble. Trahan denied that his thyroid or heart conditions bothered him. He related his disability to the March 28, 1968 accident.
Although plaintiff saw two other physicians concerning head complaints allegedly related to the accident, there is no evidence to support this claim.
*611 The trial court noted that Dr. Brown’s testimony was not presented, but did not find a presumption against plaintiff for failure to present this evidence. Dr. Brown was the original treating physician selected by plaintiff. Plaintiff’s unexplained failure to take this testimony raises a presumption that his testimony would be adverse to plaintiff. Scroggins v. Fishing Tools, Inc., 236 So.2d 505 (La.App.4th Cir. 1970); Evers v. State Farm Mutual Automobile Ins. Co., 187 So.2d 217, 222 (La.App.3d Cir. 1966). The testimony of Dr. Brown would have been particularly significant. Gates v. Ashy Construction Co., 171 So.2d 742 (La.App. 3d Cir. 1965). He observed and treated plaintiff over an extended period of time and was still treating plaintiff (for other ailments) at the time of trial.
Dr. Guy J. Dunning, orthopedic surgeon of Lafayette, examined Traham at Traveler’s request on September 6, 1968, January 21, 1969 and again on June 4, 1969.
Observations at the first examination were:
“The patient was a heavyset rather average built male who appeared to be about his stated age of 53. His gait was normal. He wasn’t wearing any type of support. Viewed from the side and the rear, there was no body malalignment. The patient located his complaint to be in the posterior lateral aspect of the mid-back. There was no swelling or deformity noted. There was no muscle spasm. There was complaint to pressure over this area.”
X-rays were taken. The radiologist reported :
“These indicated healing undisplaced fractures of the posterior lateral aspect of 8th, 9th and 10th ribs. Position of the alignment was good and callous was present but the fracture site was still partially visible.”
Dr. Dunning concluded that plaintiff might still have som'e discomfort from the area. He thought plaintiff would be symptomatic for an additional eight or nine weeks.
At the January 21st examination, plaintiff again complained of the same pain but still had no clinical objective symptoms. The radiologists report on X-rays made that day stated:
“There was good callous forming at the fracture site and healing is occurring, but the fracture line is still faintly visible.”
Dr. Dunning concluded that the incomplete healing of the fracture line indicated some continued disability, “but felt that this should rapidly subside.” Tr. 44.
The June 4th, 1969 examination was a repeat of the earlier two except that the X-rays showed healed fractures of the 8th, 9th and 10th ribs posteriorly. He concluded that plaintiff had completely recovered. There was no objective evidence to support plaintiff’s claim of disability.
Travelers then terminated workmen’s compensation benefits.
Dr. Norman P. Morin, orthopedic surgeon of Lake Charles, examined plaintiff on behalf of plaintiff, on October 8, 1969 and on February 2, 1970. On October 8, Dr. Morin found no external evidence of injury, no swelling, increased heat, rubor, or masses. Tahan did complain of tenderness. X-rays taken that day revealed fractures of the 8th, 9th, and 10th ribs posteriorly on the right within the mid scapula line. There was good healing of the eighth rib with abundant callous formation and without complete healing of the fracture line of the ninth and tenth ribs.
Dr. Morin concluded that Trahan’s “complaints were justified on the basis'of the residuals of the fracture of the 8th, 9th, and 10th right ribs posteriorly.”
“ * * * the abundant callous formation about the ninth and tenth ribs, with visible fracture line, would suggest motion at this site, and, as yet, incomplete *612 healing. This, together with possible impingement on the intercostal nerves, could well result in considerable pain with activity. And as such, I felt he was disabled from returning, at that time, to oilfield work. I also felt that he would profit from a chest binder and moist heat to this area, and that he should be re-evaluated in six to eight weeks.”
Trahan did not wear a chest binder nor did he submit to moist heat treatments.
Dr. Morin acknowledged that either he misinterpreted the October 4, 1969 X-rays, or Dr. Dunning misinterpreted the June 4, 1969 X-rays. Tr. 60. Dr. Morin also acknowledged that interpretation of X-rays is helped by having progressive X-rays showing normal healing. Nevertheless, he was of the opinion that if Dr. Dunning saw the October 4 X-rays, that he too would find incomplete healing of two of the rib fractures. Tr. 62.
The February 2, 1970 clinical examination was identical to the first examination — complaints of pain, but no objective signs. X-rays on that date
“ * * * revealed these fractures of the eighth, ninth, and tenth ribs to have healed in satisfactory alignment and position.”
Dr. Morin concluded that the fractured three ribs resulted in a five percent partial permanent disability of the body as a whole. This disability resulted from inter-costal neuritis which accounted for Tra-han’s tenderness. Dr. Morin anticipated that within three to four months plaintiff could return to work as a roughneck. Tr. 56, 57, 65.
The trial court’s conclusion that plaintiff proved total and permanent disability is manifestly erroneous. Neither orthopedic surgeon reviewed the X-rays made by the other. Trahan had no clinical objective symptoms subsequent to September 6, 1968. Trahan admitted that his family physician had been treating him regularly for thyroid and heart problems, but Dr. Brown stopped treating the rib fractures in July, 1968. Trahan refused to wear the chest binder provided for treatment. Plaintiff failed to call his treating physician. Plaintiff’s employer went out of business shortly after the accident.
In a workmen’s compensation case, plaintiff bears the burden of establishing his claim by a preponderance of the evidence. Speculation, possibility, and even unsupported probability is not sufficient to support a judgment. King v. Employers Mutual of Wausau, 220 So.2d 201 (La.App.3d Cir. 1969); Guidry v. Gianfala & Son, Inc., 228 So.2d 347 (La.App. 3d Cir. 1969).
Plaintiff failed to establish that he was disabled after his discharge by Dr. Dunning.
The trial court judgment is reversed and set aside. Judgment is rendered in favor of The Travelers Insurance Company rejecting Sidney Trahan’s demands. Costs in the trial court and on appeal are assessed to plaintiff.
Reversed and rendered.