245 So.2d 563 (1971)
Myrle G. HEBERT, Plaintiff-Appellee,
v.
The TRAVELERS INSURANCE COMPANY, the Travelers Indemnity Company, Guy Scroggins, Incorporated, Guy Scroggins, Contractors, Inc., and Clifton J. Gaudet, Defendants-Appellants.
No. 3354.
Court of Appeal of Louisiana, Third Circuit.
March 10, 1971.
Writ Refused May 20, 1971.
*564 Holt & Woodley by Edmund S. Woodley, Lake Charles, for defendants-appellants.
Jones & Jones by Jerry G. Jones, Cameron, for plaintiff-appellee.
Before SAVOY, MILLER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
This litigation arose out of a vehicular accident which occurred on October 15, 1968, at approximately 9:04 A.M. on Louisiana Highway 82 and involved an automobile belonging to the Louisiana Wildlife & Fisheries Commission and a pickup truck owned by Guy Scroggins, Incorporated. The automobile was being driven in an easterly direction by plaintiff, Myrle G. Hebert, an employee of the Louisiana Wildlife & Fisheries Commission, and the pickup truck was being driven in a westerly direction by one of the defendants, Clifton J. Gaudet, an employee of Guy Scroggins, Incorporated. Both men were acting within the scope and course of their employment.
Gaudet had driven the truck to his jobsite near Grand Chenier earlier that morning and on his arrival there, had noticed an unusual sound in the left rear wheel of the truck. To investigate the noise he removed the offending wheel and when he did so, two parts fell out of the interior. He knew something was not as it should be but, being no mechanic, was not cognizant of the nature of the trouble, and he therefore called his home office for instructions. He was told by his employer to drive the truck to Cameron for repairs and was in the process of doing so when the brakes failed as he was overtaking a slow-moving vehicle on Highway 82. Because there were some school buses parked next to the road on his right, Gaudet decided to cross the highway and leave the road on the shoulder to his left, and thus avoid a rear-end collision with the forward vehicle. In doing so, however, he collided head-on with plaintiff's vehicle, which was approaching from the opposite direction, and inflicted the injuries sued for.
Plaintiff filed suit asking for a jury trial which was granted and resulted in a verdict of $25,000.00 in favor of plaintiff and against defendants, Clifton J. Gaudet, Guy Scroggins, Inc. as Gaudet's employer, *565 and The Travelers Insurance Company, as the liability insurer of the truck Gaudet was driving. Defendants appealed that judgment assigning several specifications of error in the trial court.
The first of these was that of the finding by the jury that defendant driver, Gaudet, was negligent. This point is but mildly disputed by defendants and suffice it to say that we think justifiably so. Gaudet was well aware that something was wrong with his truck, at least knowing that two parts were missing from one of his wheels. Nevertheless he set out on the highway and traveled thereon at an admitted speed of 45 miles per hour. He admitted also that he saw plaintiff's automobile approaching from the opposite direction before he drove his truck across the highway and, of course, across plaintiff's path. Plaintiff, when he saw Gaudet's truck coming at him, at first applied his brakes thinking that Gaudet still had time to re-enter his own lane. When he failed to do so, plaintiff pulled his automobile toward his right side, still thinking that defendant's truck would go back to its proper lane of travel. Finally, when plaintiff saw that the truck was not going to leave the shoulder on plaintiff's right, he attempted to pull back into his lane of travel, but by then it was too late and the two collided on plaintiff's side of the highway. Under these facts we certainly cannot say that the jury erred in finding defendants negligent and plaintiff free from negligence.
The next specification of error which we consider is that the trial judge erred in not granting defendants a continuance in order to secure the attendance of their expert witness, Norman P. Morin, M.D., who had been subpoenaed but was unable to attend the trial. Dr. Morin's deposition was taken prior to the trial as was that of all the other physicians whose testimony is made part of the record. None of these physicians testified in person but all did so only by deposition. Considering these circumstances we do not see how defendants were injured as a result of not having the requested continuance.
Defendant also urges that the trial court committed error in allowing plaintiff to suggest the unit-of-time method of determining damages to the jury. Under this method, it is determined what the plaintiff's pain and suffering is worth in monetary terms for a given unit of time and then that figure is multiplied by the number of the said units of time contained in the expected duration of the pain and suffering. Thus a final figure is arrived at which supposedly represents a reasonable picture of what the amount of general damages should be. Although our Supreme Court has generally rejected the use of mathematical formulae in the determination of the amounts of damages, Pennington v. Justiss-Mears Oil Co., 242 La. 1, 134 So.2d 53; McFarland v. Illinois Central Railroad Co., 241 La. 15, 127 So.2d 183, the unit-of-time argument was approved by our brothers of the First Circuit in Little v. Hughes, La.App., 136 So.2d 448. Be that as it may, the record before us is so incomplete as to preclude our passing on this point. In his closing argument to the jury counsel for plaintiff made the following statement:
* * * "Here's the big key in this case. What's it worth to sleep on a board, and your wife sleep in the same bed with the same damn boardwhat's that worth? All the rest of the days of your life, what's it worth to have pain?"
The statement was objected to as entering the unit-of-time argument and the objection was overruled by the trial judge who then proceeded to caution the jury that counsel's statements were simply argument and were not to be taken into consideration in reaching a verdict. With regard to what was said thereafter the record is silent, and we are therefore unable to determine whether in fact counsel's remarks constituted error. Accordingly, we *566 express no opinion on this specification of error.
Finally we come to defendant's contention that the jury awarded excessive damages. Plaintiff was taken from the scene of the accident, via ambulance, to a hospital in Cameron which lacked the capability to treat his wounds and so he was sent to St. Patrick's Hospital in Lake Charles. There he was treated in the emergency room by Dr. Edmund Nagem, a surgeon. The doctor debrided and sutured an eight inch soft tissue laceration which extended laterally from the mid-line of plaintiff's back, and admitted him to the hospital. Plaintiff was also noted to have a few minor abrasions on the extremities, a laceration on the posterior right arm, and some abrasions of the shoulder, none of which appear to have been of a serious nature. Dr. Nagem saw plaintiff daily while he was in the hospital and on October 17 he redressed the back would and found it to be healing well. On October 19 plaintiff was released from the hospital with instructions to visit Dr. Nagem at his office, which he did on October 24th for the removal of his stitches. Finally, on November 7 a second visit by plaintiff to the doctor's office resulted in a finding that the wound was healed, and his consequent discharge as being fit to resume working. On neither of those visits did the doctor have any notation of, or recall, plaintiff's having complained of pain.
On January 10, 1969 plaintiff returned to Dr. Nagem with complaints of low back pain. An examination was performed, the results of which were entirely negative except for slight tenderness over the sacral region and over the right lumbrosacral region. The doctor considered plaintiff's pain to be minimal in character and prescribed some muscle relaxants for him. On April 14, 1969 plaintiff again visited Dr. Nagem and complained of low pain over the incision which was burning in nature and of slight pain over the center of the vertebral column. The doctor examined plaintiff and found that he complained of slight pain on extension of his back in bending backward and on right lateral bending. However he found no muscle spasm and stated that the pain was but a subjective response of plaintiff. Dr. Nagem did not opine that plaintiff's complaints were serious enough to warrant his being referred to an orthopedist or even to justify the taking of x-rays.
At the request of his attorney, plaintiff next consulted Dr. Charles V. Hatchette, an orthopedic surgeon from Lake Charles, on June 24, 1969, and complained to him of pain in the low back aggravated by lifting, sudden motions of his back, and standing or sitting too long in one position. The doctor conducted a complete physical examination of plaintiff, including x-rays. On the basis of the examination the doctor concluded that plaintiff had at that time practically recovered from a lumbosacral injury of the straining type, and that he would be completely recovered in three to four months. He stated, as had Dr. Nagem, that the laceration in plaintiff's back was not deep enough to involve either the musculature or the fascia. Plaintiff returned to see Dr. Hatchette on September 23, 1969, at which time he was greatly improved but still complaining of pain in his lower back. On that occasion he was given a prescription for a lumbosacral corset with the instructions to use it only when he felt he must. This physician considered plaintiff's back to be within normal limits. His x-rays revealed nothing that would account for plaintiff's back pain as there was no slippage of any of the vertebrae bodies, spondylolisthesis, or defects in the pedicles of the lumbosacral spine. There was some narrowing of the lumbosacral interspace, posteriorly, but it was very mild in degree and to be expected in a man of plaintiff's age. Dr. Hachette stated that plaintiff's excessive weight (he was 5'9" tall and weighed 200 lbs.) could be a factor in his problem, as the postural changes brought on by excessive weight can produce the same things that plaintiff complained of.
*567 Plaintiff's attorney next sent him to one Dr. A. E. Minyard of Galveston, Texas. Dr. Minyard, an orthopaedic surgeon, first saw plaintiff on November 17, 1969 at which time he complained of neck and back pain. The doctor conducted an examination of plaintiff and had x-rays taken which revealed very minimal osteo-arthritis in the cervical spine and some narrowing of the L-5, S-1 lumbosacral joint. His initial diagnosis was a fifth lumbar disc herniation with involvement of the L-5 and S-1 nerve roots. Plaintiff returned to Dr. Minyard on December 1, 1969 and he was put on sodium salicylate for joint pain and Equagesic as a muscle relaxant and pain reliever. On December 22, 1969 plaintiff was placed in a lumbosacral corset and on a program of proper back use, but he did not respond as well as the doctor thought he should and, therefore, on March 1, 1970, he was admitted to John Sealy Hospital in Galveston where a lumbar myelogram was performed. The myelogram revealed no significant abnormality, ruling out the doctor's original diagnosis, and he was discharged from the hospital, feeling well, within four days of his admittance. Plaintiff visited this physician twice more before the date of the deposition, on March 13 and on March 24, 1970. Dr. Minyard's final diagnosis was "tears in the ligaments between the lumbosacral joint, resulting in scar tissue and irritation to these nerves." He prescribed a back brace, which plaintiff was to wear at all times except in bed, and back exercises as treatment. He also regarded plaintiff as having an unstable back and stated that in all medical probability plaintiff would have to undergo a laminectomy and fusion, a surgical procedure which two other orthopaedic specialists termed radical and unwarranted. Dr. Minyard was of the opinion that plaintiff had a 40 per cent partial temporary disability and that this could be improved only to 20 per cent permanent partial disability.
In June of 1969 plaintiff contracted a nutria hookworm infestation of both legs that required him to return to St. Patrick's Hospital for three days. He was treated for this ailment by Dr. Fritz LaCour, a general practitioner in Lake Charles. Dr. LaCour examined plaintiff thoroughly upon his admission to the hospital and found nothing wrong with him other than the hookworm infestation. We think it significant that at a time when plaintiff was allegedly suffering the disabling pain herein complained of, he underwent a three day stay in the same hospital as had treated him for the back injury and never mentioned his back ailment to his treating physician, especially in view of the fact that he entered the hospital only three days after his visit to Dr. Hachette.
Finally, plaintiff was examined by Dr. Norman P. Morin, a specialist in orthopaedic surgery, practicing in Lake Charles. At the request of defendants, Dr. Morin conducted a thorough orthopaedic examination of plaintiff. He not only found no evidence of injury, other than the superficial scar on plaintiff's back, but he raised serious doubts of plaintiff's sincerity. This he did by the performance of a number of tests designed to determine the veracity, or lack thereof, of a patient's subjective complaints of pain. In each instance plaintiff's responses to the doctor's inquiries regarding the presence of pain indicated that his complaints were not genuine. It was Dr. Morin's opinion that there was nothing at all wrong with plaintiff at the time he examined him and that his injury, if any, had been at most, a myofascial strain, or muscle pull.
We see then, that the medical testimony is in hopeless conflict with Dr. Minyard declaring that plaintiff is seriously injured and Drs. Nagem, Hatchette, and Morin considering him to be, in varying degrees, a well man. Ordinarily, when such a conflict occurs, it is left to the jury, who saw and heard the witnesses, to determine which version will be accepted and their finding will not be reversed in the absence of manifest error. Sensat v. Travelers Indemnity Co., La.App., 166 So.2d 316. This, however, *568 is not an ordinary case since all of the expert testimony was taken by deposition and the jury did not see or hear the witnesses. Under such circumstances the jury was in no better position than are we to determine the weight to be assigned to the testimony of the various experts. Scroggins v. Fishing Tools, Inc., 236 So. 2d 505 (La.App., 4th Cir. 1970); Jones v. New Orleans Great Northern R. Co., 122 La. 354, 47 So. 679 (Sup.Ct.1908); Osborn v. Moore, 12 La.Ann. 714 (Sup.Ct. 1857). It is our opinion that the jury in its apparent acceptance of the testimony of Dr. Minyard over that of the other three physicians, two of which were orthopaedic specialists, committed reversible error, and we so hold. Ardoin v. Travelers Ins. Co., La.App., 229 So.2d 426; Stroud v. State Farm Mutual Automobile Ins. Co., La.App., 140 So.2d 693.
Considering all of the expert testimony we conclude that plaintiff suffered a laceration of his lower back which, though extensive, was not very deep in nature and healed normally within a few weeks. Along with this he sustained a possible lumbosacral strain and minor cuts and bruises, all of which were very likely healed by the time of trial. Based on these conclusions we think an award of $5,000.00 for his pain, suffering and temporary partial disability would be adequate.
Plaintiff proved special damages of medical and pharmaceutical expenses totaling $1,061.68 and lost wages totaling $520.00.
In his answer to the appeal plaintiff complains that the trial court erred in setting interest on the award at five per cent. He correctly points out that Articles 1938 and 2924 of the Louisiana Civil Code, which set the rate of legal interest at five per cent, were amended by Act No. 315 of 1970 so as to increase the rate of legal interest to seven per cent. However, under La.R.S. 13:4203 legal interest in ex delicto cases attaches from the date of judicial demandnot from the date of judgment. Judicial demand in this case was made on October 9, 1969, long before the effective date of the change in the law occasioned by Act 315 of 1970. That act contains no language which could be interpreted as making its provisions retroactive and therefore, this portion of the trial court's judgment is affirmed.
For the foregoing reasons the judgment of the trial court is amended so as to reduce the award to plaintiff from $25,000.00 to $6,581.68 and as thus amended is affirmed.
Amended and affirmed.